PFEIFER *v.* W. B. WORTHEN COMPANY.

4-3514

Opinion delivered July 2, 1934.

*E. Charles Eichenbaum,* for appellants.

*G. DeMatt Henderson,* for appellee.

JOHNSON, C. J. This appeal involves the liability of appellants to appellee for debt which arose under the following circumstances: On April 7, 1926, F. J. Schmutz and wife executed and delivered their promissory note and real estate mortgage securing payment thereof to appellee, W. B. Worthen Company (the amount of which is not here of importance), which note by its terms matured one year after date. On June 1, 1926, Schmutz and wife conveyed the mortgaged property to one Levy, who assumed and agreed to pay the mortgage debt. On November 9, 1926, Levy conveyed the mortgaged property to appellants, who assumed and agreed to pay the mortgage debt. On April 7, 1927, the due date of the Schmutz note and mortgage, upon the application of appellants, the mortgagee extended the maturity of the Schmutz note and mortgage until April 7, 1930. On November 6, 1928, appellants conveyed the mortgaged property to one Keys, who purchased, subject to the mortgage debt, and not assuming or agreeing to pay the same. Prior to the advanced maturity date of April 7, 1930, upon application of Keys, appellee extended the maturity date of said note and mortgage from April 7, 1930, to April 7, 1933. This extension to Keys was granted by appellee without notice to appellants or either of them. From the facts thus adduced, the chancellor determined that appellants were liable for the mortgage debt, and this appeal is prosecuted therefrom.

Appellants' contention is that on November 6, 1928, when they conveyed the mortgaged property to Keys, thereby their legal status to appellee was converted into one of suretyship and that the extension of time by appel-

lee to Keys without notice to appellants discharged them from liability.

It is the settled doctrine in this State that a purchaser of mortgaged lands from a mortgagor who assumes and agrees to pay the mortgage debt thereupon becomes personally liable therefor, and this personal liability inures to the benefit of the mortgagee who may enforce it in an appropriate action. *Wallace* v. *Hammonds,* 170 Ark. 952, 281 S. W. 902; *Felker* v. *Rice,* 110 Ark. 70, 161 S. W. 162; *Walker* v. *Mathis,* 128 Ark. 317, 194 S. W. 702; *Kirby* v. *Young,* 145 Ark. 507, 224 S. W. 970; *Beard* v. *Beard,* 148 Ark. 29, 228 S. W. 734.

In the more recent case of *Central Life Ins. Co.* v. *Thompson,* 182 Ark. 705, 33 S. W. (2d) 388, we expressly held that one primarily liable for a mortgage debt was not converted to the status of suretyship therefor by showing a conveyance of his interest in the mortgaged land to a third party plus an extension of the maturity of such mortgage debt by the express agreement of the mortgagee with such third party. We think the doctrine announced in the case last cited is controlling here. Appellants, by assuming and agreeing to pay the mortgage debt recited in their deed, and also by applying to appellee for and receiving an extension of the maturity of such mortgage debt, became personally and primarily liable therefor, and their subsequent conveyance of said mortgaged lands to Keys and the procuring by Keys of an extension of the mortgage debt from appellee did not have the legal effect of converting their legal status from primary liability to that of suretyship. Appellants, being primarily liable for the mortgage debt, could escape liability only by payment, release or other defenses which might inure to one primarily liable.

It may be that the doctrine thus announced is contrary to the weight of American authority on this question, but, if such be true, it is equally as important that *quasi* rules of property be stable and permanent, as that court opinions of all States should be uniform.

No error appearing, the judgment is affirmed.